Richard T. Drury (CBN 163559)
richard@lozeaudrury.com
Rebecca Davis (CBN 271662)
rebecca@lozeaudrury.com
LOZEAU DRURY LLP
410 12th Street, Suite 250
Oakland, CA 94607
Telephone: (510) 836-4200
Facsimile: (510) 836-4205

[Additional counsel appearing on signature page]

*Attorneys for Plaintiffs KERRY KINGDON, HENRY HUMMERT, and the Class*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**_____ DIVISION**

| | |
|---|---|
| KERRY KINGDON and HENRY HUMMERT individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TOUCHSTONE COMMUNICATIONS – II, L.L.C., a Texas limited liability company,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br><br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT**

Plaintiffs Kerry Kingdon and Henry Hummert bring this Class Action Complaint and Demand for Jury Trial ("Complaint") against Defendant Touchstone Communications – II, L.L.C. ("Touchstone") to stop its practice of making unsolicited telemarketing calls to the phones of consumers nationwide and to obtain redress for all persons injured by its conduct. Plaintiffs, for

their Complaint, allege as follows upon personal knowledge as to themselves and their own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

**NATURE OF THE ACTION**

1. Defendant Touchstone Communications – II, L.L.C. is a market leader in all aspects of telemarketing, especially in generating leads for its clients.

2. Touchstone runs a 400-seat call center in Islamabad, Pakistan to generate its calls for its various lead-generation campaigns, including auto warranty calls.[1]

3. Unfortunately for consumers, Defendant Touchstone casts its marketing net too wide. That is, in an attempt to generate leads for its various campaigns, Defendant Touchstone conducted (and continues to conduct) a wide scale telemarketing campaign that repeatedly makes unsolicited calls to consumers' telephones—including cellular telephones and numbers that appear on the National Do Not Call Registry—without consent, all in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA").

4. By making the telephone calls at issue in this Complaint, Defendant caused Plaintiffs and the members of the Classes actual harm and cognizable legal injury. This includes the aggravation and nuisance and invasions of privacy that result from the receipt of such calls, in addition to a loss of value realized for the monies consumers paid to their wireless carriers for the receipt of such calls. Furthermore, the calls interfered with Plaintiffs' and the other Class members' use and enjoyment of their cellphones, including the related data, software, and hardware components.

5. The TCPA was enacted to protect consumers from unsolicited telephone calls like

---

[1] https://www.facebook.com/pages/Touchstone-Communications-Islamabad/106970379406107

CLASS ACTION COMPLAINT
-2-

those alleged in this case. In response to Defendant's unlawful conduct, Plaintiffs file the instant lawsuit and seek an injunction requiring Defendant to cease all unsolicited telephone calling activities to consumers as complained of herein and an award of statutory damages to the members of the Class under the TCPA, together with costs and reasonable attorneys' fees.

**PARTIES**

6. Plaintiff Kerry Kingdon is a natural person and citizen of the State of California.

7. Plaintiff Henry Hummert is a natural person and citizen of the State of Pennsylvania.

8. Defendant Touchstone is an LLC organized and existing under the laws of the State of Texas with its headquarters located at 2860 Exchange Blvd St 100 South Lake, Texas 76092. Defendant conducts business throughout this District, the State of California, and the United States.

**JURISDICTION AND VENUE**

9. This Court has federal question subject matter jurisdiction under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq., which is a federal statute. Furthermore, jurisdiction is proper under the Class Action Fairness Act, 28 U.S.C. § 1332(d) et seq. because the classes each consist of over 100 people, at least one member of each class is from a State other than Texas (the state of Defendant), and the amount in controversy exceeds $5,000,000. Further, none of the exceptions to CAFA jurisdiction apply.

10. The Court has personal jurisdiction over Defendant because it solicits significant consumer business in this District and the unlawful conduct alleged in this Complaint occurred in or was directed to this District.

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendant

solicits a significant amount of consumer business within this District and because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District. Venue is additionally proper because one of the Plaintiffs resides in this District.

## COMMON FACTUAL ALLEGATIONS

12. Defendant Touchstone is a telemarketing company headquartered in Texas that uses a call center in Islamabad, Pakistan to make telemarketing sales calls.

13. Unfortunately for consumers, Defendant utilized (and continues to utilize) a sophisticated telephone dialing system to call cellular telephone users *en masse* for the purpose of promoting its services, often times calling consumers on their cellular phones.

14. In fact, Touchstone itself advertises it's dialer equipment in several recent job postings, including one posted titled "Jr Dialer Administrator" on July 4, 2015 stating "The Dialer Administrator will be responsible for the building, management, and analysis of outbound dialing campaigns."[2] In that job posting, Touchstone lists the Aspect 6.7 and Five9 dialers used by Touchstone. These systems constitute ATDSs under the TCPA.

15. Touchstone also advertised a job position ten months ago looking "to hire experienced professionals with the following portfolios Data Analyst/Manager Dialer Admin Database."[3]

16. In Defendant's overzealous marketing attempts, it placed (and continues to place) phone calls to consumers that never provided consent to be called and to consumers' cellphones with whom it had no prior dealings or relationship. Worse yet, Defendant placed (and continues to place) repeated and unwanted calls to consumers whose phone numbers are listed on the National

---

[2] http://www.rozee.pk/touchstone-communications-jr-dialer-administrator-islamabad-jobs-356200.php
[3] https://www.linkedin.com/company/touchstone-communications

CLASS ACTION COMPLAINT
-4-

Do Not Call Registry. Consumers place their phone numbers on the Do Not Call Registry for the express purpose of avoiding unwanted telemarketing calls like those alleged here.

17. Touchstone seeks to generate leads for businesses that have contracted with it to receive its leads, including mortgage companies, home security companies, auto insurance companies, health insurance companies, and home improvement companies. However, Touchstone has failed to appropriately segment its call list between landline and cell phone numbers and has made unsolicited calls to cell phone numbers with its auto-dialer, which is expressly prohibited by the Telephone Consumer Protection Act (TCPA).

18. Touchstone, or its agents acting on its behalf, use a variety of local phone numbers to make these unlawful sales calls to consumers.

19. Not surprisingly, these practices have led to significant complaints from consumers. By way of example, Touchstone uses a variety of phone numbers to generate their leads. One such phone number 480-498-3496 (the same phone number both Plaintiff were called on) has more than 11-pages of complaints on one website alone:

- They call several times a day and night! I feel violated every time my phone rings. I am on the do not call list. Very frustrating!!!!!!!!![4]
- I get calls from these people ALL OF THE TIME!!! So tired of it. Have been on the National Do Not Call Registry since it's inception and renew every 6 months. Yet they still call. Filing a complaint with the FCC is a moot point. They won't do a darned thing.[5]
- These a**holes have called my number EVERY DAY for a WEEK......I called them back on Monday of this week and told them to take my number off their list, they said ok, that they would do it......they called again on Tuesday (yesterday) and I told them AGAIN to take my number off the list, and again they said ok, they'd do it, and that it would only take 30 to 45 seconds to do it......they called AGAIN today within the past half hour. What can I do to get somebody there either in trouble or fired for pulling this BS.......can I report them to somebody who can get some results.....btw, I have cell phone records that prove exactly when they called me - dates and  times.....I e en talked to a manager, and it did absolutely no good.......[6]

---

[4] http://800notes.com/Phone.aspx/1-480-498-3496/4
[5] http://800notes.com/Phone.aspx/1-480-498-3496/10
[6] http://800notes.com/Phone.aspx/1-480-498-3496/9

CLASS ACTION COMPLAINT
-5-

- Keeps calling me every day every time I answer they either hang up or offer me auto insurance[7]
- They claimed they were some auto insurance people who had all of my information. Not sure how or why.[8]
- Offering to have other car insurance companies call me with quotes to "lower my rates." [9]
- My cell phone and my home phone numbers are on the do not call list and this company has called numerous times to my cell. This was a robo call from an insurance company.[10]
- I've spoken w/ 2 telemarketers from this company; both were men w/ very thick, Middle Eastern or Indian accents selling auto insurance.  I would doubt that they are actually located in the US.  Who would buy from them? [11]
- I'm getting at least one call from this number every day -- am pretty fed up with it.  If you can help, would appreciate it.[12]
- They call and when I answer they dont talk.  I am on the do not call list but they call anyway! [13]

20. In making the phone calls at issue in this Complaint, Defendant and/or its agent utilized an automatic telephone dialing system. Specifically, the hardware and software used by Defendant (or its agent) has the capacity to store, produce, and dial random or sequential numbers, and/or receive and store lists of telephone numbers, and to dial such numbers, *en masse*, in an automated fashion without human intervention. Defendant's automated dialing equipment includes features substantially similar to a predictive dialer, inasmuch as it is capable of making numerous calls simultaneously (all without human intervention).

21. Touchstone recently settled a case brought by the Attorney General of Missouri for violating Missouri's telemarketing and No Call laws.[14]

22. Defendant knowingly made (and continues to make) telemarketing calls without the prior express consent of the call recipients and knowingly continues to call such consumers

---

[7] http://800notes.com/Phone.aspx/1-480-498-3496/5
[8] http://800notes.com/Phone.aspx/1-480-498-3496
[9] http://800notes.com/Phone.aspx/1-480-498-3496/3
[10] http://800notes.com/Phone.aspx/1-480-498-3496/8
[11] http://800notes.com/Phone.aspx/1-480-498-3496/8
[12] http://800notes.com/Phone.aspx/1-480-498-3496/4
[13] http://800notes.com/Phone.aspx/1-480-498-3496/4
[14] http://sedalianewsjournal.com/2015/03/05/koster-sues-three-businesses-settles-with-another-over-violations-of-telemarketing-no-call-laws/

after requests to stop. As such, Defendant not only invaded the personal privacy of Plaintiffs and members of the putative Class, but also intentionally and repeatedly violated the TCPA.

**FACTS SPECIFIC TO PLAINTIFF KINGDON**

23. On March 26, 2010, Plaintiff Kingdon registered her cellular phone number on the national do not call registry to avoid receiving unsolicited telemarketing calls on her cellular phone.

24. Starting in or around August 14, 2015, Plaintiff Kingdon began receiving calls from Touchstone on her cellular telephone from the phone number (480) 498-8946.

25. Over the course of several days, Touchstone called Plaintiff at least six times.

26. On information and belief, Defendant Touchstone's telemarketers were calling her in an attempt to pitch her a car warranty program.

27. Plaintiff does not have a relationship with Defendant, has never provided her telephone number directly to Defendant, and never requested that Defendant place calls to her or offer her its services. Simply put, Plaintiff has never provided any form of prior express written consent to Defendant to place calls to her and has no business relationship with Defendant.

28. Defendant is and was aware that the above-described telephone calls were and are being made to consumers like Plaintiff who had not consented to receive them and whose telephone numbers were registered with the National Do Not Call Registry.

**FACTS SPECIFIC TO PLAINTIFF HUMMERT**

29. On February 5, 2015, Plaintiff Hummert registered his cellular phone number on the national Do Not Call registry to avoid receiving unsolicited telemarketing calls on his cellular phone.

30. Starting in or around August 19th, 2015, Plaintiff Hummert began receiving calls

from Touchstone on his cellular telephone from the phone number (480) 498-8946.

31.     The first call he answered, he heard a pre-recorded message soliciting a car warranty program.  He completed the instructions on the pre-recorded menu to opt out of future calls.

32.     The next day, he received another call from (480) 498-8946. He called the number back and demanded to the live operator that she should take his phone number off their list. He informed the operator that he is charged for all incoming and outgoing calls and that the calls cost him money and to immediately stop making any future calls to his phone number. In fact, the Plaintiff Hummert is charged for incoming calls to his cellphone.

33.     Plaintiff Hummert continued to receive more calls from Defendant, at least eight calls in total including two calls on August 19th, August 20th, August 26th, two calls on August 31st, September 1st, and September 2nd.

34.     On information and belief, Defendant Touchstone's telemarketers were calling him in an attempt to pitch him a car warranty program.

35.     Plaintiff does not have a relationship with Defendant, has never provided his telephone number directly to Defendant, and never requested that Defendant place calls to him or offer him its services. Simply put, Plaintiff has never provided any form of prior express written consent to Defendant to place calls to him and has no business relationship with Defendant.

36.     Defendant is and was aware that the above-described telephone calls were and are being made to consumers like Plaintiff who had not consented to receive them and whose telephone numbers were registered with the National Do Not Call Registry.

**CLASS ALLEGATIONS**

37.     **Class Allegations**: Plaintiffs Kingdon and Hummert bring this action pursuant to

Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3) on behalf of themselves and the two classes defined as follows:

> **Autodialed No Consent Class**: All persons in the United States who from October 22, 2011 to the present: (1) Touchstone called; (2) on the person's cellular telephone number; (3) for whom Defendant claims it obtained prior express consent in the same manner as Defendant claims it obtained prior express consent to call the Plaintiffs.
>
> **Do Not Call Registry Class**: All persons in the United States who (1) Touchstone called more than one time on his/her cellphone; (2) within any 12-month period from October 22, 2011 to the present, (3) where the cellphone number had been listed on the National Do Not Call Registry for at least thirty days; (4) for the purpose of soliciting products or services; and (5) for whom Defendant claims it obtained prior express consent in the same manner as Defendant claims it obtained prior express consent to call the Plaintiffs.

The following people are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons. Plaintiffs anticipate the need to amend the class definitions following discovery related to such issues.

38. **Numerosity**: The exact sizes of each of the Classes are unknown and are not available to Plaintiffs at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendant made telephone calls to thousands of consumers who fall into the definition of the Classes. Members of the Classes can be easily identified through Defendant's records.

39. **Commonality and Predominance**: There are many questions of law and fact

CLASS ACTION COMPLAINT
-9-

common to the claims of the Plaintiffs and the Classes, and those questions are central to the case and predominate over any questions that Defendant may claim affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

(a) Whether Defendant's conduct violated the TCPA;

(b) Whether Defendant systematically made telephone calls to individuals who did not previously provide Defendant and/or its agents with their prior express consent to receive such phone calls;

(c) Whether Defendant made the calls with the use of an ATDS;

(d) Whether Defendant systematically made telephone calls to consumers whose telephone numbers were registered with the National Do Not Call Registry; and

(e) Whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct.

40. **Typicality**: Plaintiffs' claims are typical of the claims of the other members of the Classes. Plaintiffs and the Classes sustained damages as a result of Defendant's uniform wrongful conduct during transactions with Plaintiff and the Classes.

41. **Adequate Representation**: Plaintiffs will fairly and adequately represent and protect the interests of the Classes, and have retained counsel competent and experienced in complex class actions. Plaintiffs have no interest antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiffs.

42. **Policies Generally Applicable to the Classes**: This class action is appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the

Classes as respective wholes, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members, and making final injunctive relief appropriate with respect to the Classes. Defendant's practices challenged herein apply to and affect the Class members uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes as respective wholes, not on facts or law applicable only to Plaintiffs.

43. **Superiority and Manageability**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy given that joinder of all parties is impracticable. The damages suffered by the individual members of the Classes will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual members of the Classes to obtain effective relief from Defendant's misconduct. Even if members of the Classes could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

**FIRST CAUSE OF ACTION**
**Violation of 47 U.S.C. § 227**
**(On behalf of the Plaintiffs and the Autodialed No Consent Class)**

44. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

45. Defendant made unsolicited and unwanted telemarketing calls to telephone numbers belonging to the Plaintiffs and the other members of the Autodialed No Consent Class—without their prior express written consent—in an effort to sell its products and services.

46. Defendant made the telephone calls using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers, *en masse*.

47. Defendant utilized equipment that made the telephone calls to the Plaintiffs and other members of the Class simultaneously and without human intervention.

48. By making unsolicited telephone calls to Plaintiffs and members of the Class's cellular telephones without prior express consent, and by utilizing an ATDS, Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii).

49. As a result of Defendant's unlawful conduct, Plaintiffs and the members of the Class suffered actual damages in the form of monies paid to receive the unsolicited telephone calls on their cellular phones and a reduction in their allotment of minutes and, under Section 227(b)(3)(B), are each entitled to, *inter alia*, a minimum of $500 in damages for each such violation of the TCPA.

50. Should the Court determine that Defendant's conduct was willful and knowing, the Court may, pursuant to Section 227(b)(3), treble the amount of statutory damages recoverable by the Plaintiffs and the other members of the Class.

**SECOND CAUSE OF ACTION**
**Violation of 47 U.S.C. § 227 *et seq*.**
**(On behalf of the Plaintiffs and Do Not Call Registry Class)**

51. Plaintiffs incorporates the foregoing allegations as if fully set forth herein.

52. 47 U.S.C. § 227(c) provides that any "person who has received more than one

telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.

53.     The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

54.     47 C.F.R. § 64.1200(e), provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, 'Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,'" which the Report and Order, in turn, provides as follows:

> The Commission's rules provide that companies making telephone solicitations to residential telephone subscribers must comply with time of day restrictions and must institute procedures for maintaining do-not-call lists. For the reasons described above, we conclude that these rules apply to calls made to wireless telephone numbers. We believe that wireless subscribers should be afforded the same protections as wireline subscribers.

55.     47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (1) Written policy. Persons or entitles making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request . . . .

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

56. Defendant violated § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to wireless telephone subscribers such as Plaintiffs and the Do Not Call Registry class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government. These consumers requested to not receive calls from Defendant, as set forth in § 64.1200(d)(3).

57. Defendant made more than one unsolicited telephone call to Plaintiffs and members of the Do Not Call Registry class within a 12-month period without their prior express consent to receive such calls. Plaintiffs and members of the Do Not Call Registry class never

provided any form of consent to receive telephone calls from Defendant, and/or Defendant does not have a current record of consent to place telemarketing calls to them.

58. Defendant violated § 64.1200(d) by initiating calls for telemarketing purposes to wireless telephone subscribers, such as the Plaintiffs and the Do Not Call Registry class, without instituting procedures that comply with the regulatory minimum standards for maintaining a list of persons who request not to receive telemarketing calls from them.

59. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiffs and the Do Not Call Registry class received more than one telephone call in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendant's conduct as alleged herein, Plaintiffs and the Do Not Call Registry class suffered actual damages and, under section 47 U.S.C. § 227(c), are each entitled, *inter alia*, to receive up to $500 in damages for such violations of § 64.1200.

60. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry class.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs Kerry Kingdon and Henry Hummert, individually and on behalf of the Classes, prays for the following relief:

1. An order certifying the Classes as defined above, appointing Plaintiff Kerry Kingdon and Henry Hummert as the representatives of the Classes and appointing their counsel as Class Counsel;

2. An award of actual and statutory damages;

3. An injunction requiring Defendant and its agents to cease all unsolicited telephone

calling activities, and otherwise protecting the interests of the Classes;

4. An award of reasonable attorneys' fees and costs; and

5. Such other and further relief that the Court deems reasonable and just.

**JURY DEMAND**

Plaintiffs request a trial by jury of all claims that can be so tried.

Respectfully Submitted,

**KERRY KINGDON AND HENRY HUMMERT**,
individually and on behalf of all others similarly situated,

Dated: October 22, 2015         By: /s/ Richard Drury_____
                                    One of Plaintiffs' Attorneys

Richard T. Drury (CBN 163559)
richard@lozeaudrury.com
Rebecca Davis (271662)
rebecca@lozeaudrury.com
LOZEAU DRURY LLP
410 12th Street, Suite 250
Oakland, CA 94607
Telephone: (510) 836-4200
Facsimile: (510) 836-4205

Steven L. Woodrow
(swoodrow@woodrowpeluso.com)*
Patrick H. Peluso
(ppeluso@woodrowpeluso.com)*
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

*Counsel for Plaintiff and the Putative Class*

*\*pro hac vice* admission to be filed